IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DARLENE WHITE, as Personal Representative for the ESTATE OF BRANDON ROBERTS, and ERICA JONES, as guardian of minors N.R. and B.R., | : : : : : | |
| Plaintiffs, | : : | Civil Action No. 21-1833-SRF |
| v. | : : : | |
| CORPORAL NIGEL GOLDING, PATROLMAN PATRICK KARPIN, and CITY OF MILFORD, | : : : : | JURY TRIAL DEMANDED |
| Defendants. | : | |

**MEMORANDUM OPINION**[1]

## I. INTRODUCTION

This is an action for wrongful death and civil rights violations arising from the use of force against Brandon Roberts ("Roberts"). Roberts was fatally shot by Corporal Nigel Golding ("Corporal Golding") and Patrolman Patrick Karpin ("Patrolman Karpin") of the City of Milford Police Department ("City of Milford") (collectively, "Defendants"), who responded to Roberts' apartment following his 911 call. (D.I. 1 at ¶¶ 1, 27) Defendants filed the pending Motion for Partial Dismissal ("Motion") of the claim for violation of the Americans with Disabilities Act ("ADA") (Count II) for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (D.I. 14) Plaintiffs Darlene White ("White") and

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), the parties consented to the jurisdiction of a magistrate judge to conduct all proceedings in this matter through final judgment, and the case was assigned to the undersigned judicial officer on April 14, 2022. (D.I. 13)

[2] The briefing for the Motion for Partial Dismissal is as follows: Defendants' Motion and opening brief in support thereof (D.I. 14; D.I. 15), Plaintiffs' answering brief (D.I. 17), and Defendants' reply brief (D.I. 18).

Erica Jones ("Jones") (collectively, "Plaintiffs") oppose the Motion and, alternatively, seek leave to amend the Complaint. (D.I. 17) For the following reasons, Defendants' Motion for Partial Dismissal is GRANTED-IN-PART and DENIED-IN-PART without prejudice, (D.I. 14), and Plaintiffs' request for leave to amend the Complaint is GRANTED. (D.I. 17 at 9)

## II.  BACKGROUND[3]

On January 5, 2020, Roberts placed a 911 call from his apartment to report a domestic dispute. (D.I. 1 at ¶ 12) During the call, he made incoherent statements before handing the phone to his domestic partner, Jones. (*Id.* at ¶ 13) Jones resided in the apartment with Roberts and their infant child. (*Id.* at ¶¶ 13, 24). According to the Complaint, Jones did not want to provide their apartment number to the 911 operator because she was concerned that "[Roberts] keeps trying to go out there with a knife." (*Id.* at ¶ 16). While Jones spoke with the 911 operator, Roberts disclosed their apartment address. (*Id.* at ¶ 17). He made comments audible to the 911 operator that he possessed a "machete," "an AK-47," and a "bomb," and he claimed an association with ISIS. (*Id.* at ¶ 18) Roberts was further heard on the 911 call telling Jones that "he loved her" and that "y'all are going to have to shoot me, because I'm not going to jail." (*Id.* at ¶ 19) Jones informed the operator that there were no weapons in the apartment besides a "house knife." (*Id.* at ¶ 21) She told the operator that Roberts "has a mental disability so that's why he's acting like this." (*Id.* at ¶ 22) When Jones observed the police arriving, she again told

---

[3] The facts alleged in the Complaint are assumed to be true for purposes of resolving the partial motion to dismiss them for failure to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving the motion, the Court may consider facts alleged in the complaint and its attachments, matters of public record, and "document[s] integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

2

the operator Roberts had a mental disability, and "he is bipolar, and he is schizophrenic . . . has anxiety and he has a lot of other problems that we don't know yet." (*Id.* at ¶¶ 23, 25)

Corporal Golding and Patrolman Karpin responded to Roberts' 911 call and approached Roberts' door with their firearms drawn. (*Id.* at ¶¶ 27–28) Corporal Golding knocked on the apartment door and announced that he was a police officer. (*Id.* at ¶ 30) Roberts partially opened the door. (*Id.* at ¶ 31) The Complaint alleges that Corporal Golding had his firearm drawn and pointed at Roberts' head. (*Id.*) Roberts attempted to close the door upon confronting the armed Officer. (*Id.* at ¶ 32) It is alleged that Corporal Golding escalated the situation by forcing the door open. (*Id.* at ¶ 33) Roberts then stepped through the doorway with the knife pointed toward the ground. (*Id.* at ¶¶ 34–35) While Corporal Golding stepped forward, attempting to remove the knife, Patrolman Karpin discharged his firearm and struck Roberts in his upper body. (*Id.* at ¶¶ 36–37) Corporal Golding also fired his weapon at Roberts. (*Id.* at ¶ 40) Roberts was shot eight times and did not survive. (*Id.* at ¶¶ 43, 51)

On December 28, 2021, Darlene White, Roberts' mother, and Erica Jones, the mother of decedent's minor children, commenced this action against Defendants, asserting a wrongful death claim under Delaware law. (*Id.* at ¶ 47) Plaintiffs further assert that Defendants violated the Fourth Amendment under 42 U.S.C. § 1983 by using unreasonable force resulting in Roberts' death (Count I). (*Id.* at ¶ 57) Relevant to the pending Motion, Plaintiffs allege that the Defendant City of Milford violated Title II of the ADA and the Rehabilitation Act ("RA") by "fail[ing] to provide reasonable modifications to its policies and practices to accommodate Brandon Roberts's disability related needs when making contact with him at his home" (Count II). (*Id.* at ¶ 61) Plaintiffs claim that the Defendants were deliberately indifferent to Roberts' mental disability and seek damages in excess of one million dollars. (*Id.* at ¶¶ 62, 64)

On April 18, 2022, Defendants moved to dismiss Plaintiffs' ADA claim in Count II for failure to state a claim for which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 14) Defendants rely on videotaped evidence of the incident and the investigative report of the use of deadly force prepared by the Delaware Department of Justice ("DOJ") in support of their argument that there exists no reasonable dispute that the use of force was reasonable and necessary to protect the lives of the Officers and occupants in Roberts' apartment. (D.I. 15 at 4–8) Moreover, Defendants argue there are no facts alleged in the Complaint of any accommodation that would have been possible given the exigent circumstances. (*Id.* at 14) For the reasons which follow, the court grants-in-part Defendants' Motion for Partial Dismissal of the ADA claim but grants Plaintiffs leave to amend their Complaint.

## III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Iqbal*, 556 U.S. at 663. A claim is facially plausible when the factual allegations allow the court to

4

draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1420 (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV. DISCUSSION

Defendants' Motion for Partial Dismissal is limited to Plaintiffs' claim that Defendant City of Milford violated the ADA. (D.I. 14 at 8) Defendants argue that the ADA is not applicable to encounters with the police involving exigent circumstances such as their encounter with Roberts who was armed with a knife. (*Id.* at ¶ 34; D.I. 15 at 12–15) Additionally, if the ADA is applicable, then the Complaint fails to sufficiently allege Roberts was subjected to intentional discrimination. (D.I. 14 at ¶¶ 31–33; D.I. 15 at 15–16) Plaintiffs oppose the Motion on the basis that they have sufficiently pled an ADA violation and intentional discrimination. (D.I. 17 at 5–7) The court denies-in-part without prejudice the Defendants' Motion for Partial Dismissal to the extent it asks the court for a dispositive ruling at this stage of the proceedings that the ADA does not apply to their encounter with Roberts. The court grants-in-part the Defendants' Motion for Partial Dismissal on the basis that the Plaintiffs have failed to plausibly plead intentional discrimination.

### A. Plaintiffs Have Sufficiently Pled Roberts was a Qualified Individual with a Disability

To successfully state a claim under Title II of the ADA, the plaintiff must establish that the decedent "(1) [was] a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Haberle v. Troxell*, 885 F.3d 170, 178 (3d. Cir) ("*Haberle I*") (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n. 32 (3d Cir. 2007)), *remanded to Haberle for Estate of Nixon v. Borough of Nazareth*, No. 5:15-cv-02804, 2018 WL 4770682, at *4–5 (E.D. Pa. Oct. 2, 2018), *rev'd, Haberle v. Borough of Nazareth*, 936 F.3d 138 (3d Cir. 2019) ("*Haberle II*"). The same standards govern claims pursuant to Section 504 of the RA.[4] *McDonald v. Commonwealth of Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 94–95 (3d Cir. 1995). Additionally, the Third Circuit has held claims for compensatory damages under Section 202 of the ADA also require a finding of "intentional discrimination." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261 (3d Cir. 2013).

As a threshold matter, the Third Circuit and this District Court have already determined that the ADA generally applies when a qualified arrestee with a disability has an encounter with police. *See Haberle I*, 885 F.3d at 179; *Glover v. City of Wilmington*, 966 F. Supp. 2d 417, 428– 29 (D. Del. 2013). *Haberle I* established that an arrestee is a "qualified individual" under the ADA because "there is nothing to categorically exclude [him or her] from the statute's broad coverage" and he or she "may have disabilities covered by the ADA." 885 F.3d at 179.

---

[4] Because an ADA claim requires the same elements as a claim under the RA, when the term "ADA" is used throughout this opinion it is intended to incorporate Plaintiffs' claim under the RA.

Therefore, the question before the court is whether Plaintiffs plausibly alleged in the Complaint that Roberts had a disability covered by the ADA.

The ADA defines "disability" with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

In the Complaint, Plaintiffs allege that Roberts was "experiencing a mental health crisis." (D.I. 1 at ¶ 1) Additionally, Plaintiff Jones emphasized on the 911 call that Roberts had "a mental disability" and to "please take it easy on him because he is bipolar, and he is schizophrenic. . . . He has anxiety and he has a lot of other problems that we don't know yet." (*Id.* at ¶¶ 22, 25)

Assuming the truth of the allegations for purposes of the pending Motion, the court finds Plaintiffs have plausibly pled that Roberts was regarded as disabled. *Cf. Mohney v. Pennsylvania*, 809 F. Supp. 2d 384, 401–02 (W.D. Pa. 2011) (finding plaintiff failed to sufficiently plead the decedent was regarded as disabled because the responding officer, who allegedly discharged his taser at the decedent who had doused himself with gasoline, was not the officer who responded to decedent's prior suicide attempt and was otherwise unaware of decedent's mental condition).

Unlike in *Mohney*, the court finds that Defendants were aware they were responding to a 911 call concerning a person with a mental disability based upon the statements Roberts and Jones made to the 911 operator. (*See, e.g.*, D.I. 1 at ¶¶ 12, 22, 25, 29) The court finds Plaintiffs plausibly pled that Roberts was a qualified individual with a mental disability for purposes of asserting a claim under the ADA.

### B. Violation of the ADA

Defendants urge the court to determine, as a matter of law, that the ADA is not applicable to police officers responding to an incident when they face an exigent threat. (D.I. 14 at ¶¶ 25–34) Defendants contend that Roberts threatened violence on the 911 call, advanced toward the responding Officers in a confined space with a knife, thereby putting in danger the lives of the Officers and the individuals inside the apartment. (*See* D.I. 15 at 9; D.I. 18 at 6–8 (citing allegations in the Complaint)) Defendants argue these facts are "undisputed" and establish that "reasonable minds could not differ" in concluding that the Defendants had no duty to accommodate Roberts' mental disability under these circumstances. (D.I. 14 at ¶ 28)

In *Haberle I*, the Third Circuit acknowledged the disagreement among the Circuits "concerning the point during a law enforcement encounter at which the ADA applies to police conduct [but] no court of appeals has held that the ADA does not apply at all." 885 F.3d at 181. As an example, the court cited the Fifth Circuit's decision in *Hainze*, which held "that Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents . . . prior to the officer's securing the scene and ensuring that there is no threat to human life." *Id.* (quoting *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000)). The court did not have occasion to decide the issue in *Haberle I*, stating in a footnote:

> A successful ADA claim demands more than an allegation of an arrest of a qualified individual with a disability. The implementing regulations for the ADA make clear that there must also have been a failure to make reasonable accommodations. The analysis as to what is 'reasonable' under the circumstances, including exigent circumstances, and as to how their determination is reached, presents complicated issues. We have no occasion now to consider the analytical approach to an ADA claim arising from an arrest because we conclude that [plaintiff's] ADA claim for money damages fails due to her failure to plead deliberate indifference. Nevertheless, in the future, *we may need to consider whether and under what circumstances it is reasonable to require police officers to make accommodations during an arrest when they face an exigent threat.*

*Id.* at n. 11 (internal citations omitted) (emphasis added).

8

Although the issue remains unresolved by the Third Circuit, this court agreed with the reasoning in *Hainze* that the ADA does not apply to a police officer's on-the-street response to a reported disturbance prior to securing the scene, regardless of whether the incident involves an individual with a mental disability. *Glover*, 966 F. Supp. 2d at 429. Defendants argue that *Glover* requires dismissal of Plaintiffs' ADA claim as a matter of law. (*See* D.I. 15 at 12–14)

The court finds *Glover* distinguishable from the instant case. In *Glover*, the court did not have to consider whether the ADA was inapplicable to a police officer's on-the-street response to a disturbance because those facts were not before it. The plaintiff, who was having a panic attack following a car accident, was wrongfully arrested for driving under the influence. *Glover*, 966 F. Supp. 2d at 422. Plaintiff claimed that once she was in custody, the police had a duty to accommodate her disability, but no accommodation was made or offered to her. *Id.* at 429. The court found the scene was secured before any of the conduct complained of occurred and denied summary judgment, allowing the plaintiff's ADA and RA claims to proceed to trial based on the theories of "wrongful arrest" and "reasonable accommodation during arrest." *Id.* at 428–30. *See also Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1215–16, 1232–33 (9th Cir. 2014), *cert. dismissed as improvidently granted, City and Cnty. of San Francisco, Cal. v. Sheehan*, 575 U.S. 600, 608–10 (2015) (denying dismissal on summary judgment of an ADA claim asserted by the plaintiff who was armed with a knife when she was shot by officers who were attempting to take her into custody for an involuntary mental evaluation).

In their Motion, Defendants improperly attempt to refute allegations in the Complaint by introducing material outside of the Complaint. (D.I. 14 at ¶¶ 10–24) Defendants largely rely on still-frame photographs from a video of the incident and related commentary about the Officers' encounter with Roberts which appear in the DOJ report. (D.I. 15, Ex. 1) They argue the court

9

may consider the evidence without converting the Motion into a summary judgment motion because it is a matter of public record and is an "undisputedly authentic" document. (D.I. 14 at ¶¶ 10–12)

Defendants' argument fails for several reasons. First, the court cannot consider materials which are not mentioned or relied upon in the Complaint. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) ("In deciding motions under Rule 12(b)(6), courts may consider 'document[s] *integral to or explicitly relied* upon in the complaint,' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'") (internal citations omitted) (emphasis in original). Nowhere in the Complaint do Plaintiffs mention or rely upon the DOJ report. (*See* D.I. 1)

Moreover, the materials are not "undisputedly authentic." Defendants' exhibits consist of reproductions of still frame photographs taken from unidentified video footage from an unverified and unsigned report of investigation with unsworn commentary on what the photographs purport to show. Even if the court were to consider Defendants' materials and convert the pending Motion to one for summary judgment, the materials do not satisfy the requirements of Federal Rule of Civil Procedure 56(c) because they are unverified and raise material factual disputes compared to what is alleged in the Complaint.

On a motion to dismiss, the only issue before the court is the sufficiency of the pleadings, not the merits of the case. The court will not consider Defendants' unverified material outside of the pleadings. Plaintiffs allege in the Complaint that the Officers failed to communicate with Roberts through the door and escalated the situation by forcing the door open with their firearms drawn as Roberts attempted to shut it. (D.I. 1 at ¶¶ 29, 32–33) Accepting the allegations as true,

10

Defendants have not provided a basis to dismiss Plaintiffs' ADA claim in Count II of the Complaint. Therefore, Defendants' Motion for Partial Dismissal is denied-in-part without prejudice.

### C. Plaintiffs Have Failed to Plead Defendants Intentionally Discriminated against Roberts

To recover compensatory damages related to an ADA claim, Plaintiffs must sufficiently plead Defendants intentionally discriminated against Roberts. Intentional discrimination requires a showing of deliberate indifference. *Haberle I*, 885 F.3d at 181 (citing *S.H. ex rel. Durrell*, 729 F.3d at 263). Plaintiffs can establish deliberate indifference either by "showing that the [Department's existing policies] failed to adequately respond to a pattern of past occurrences of injuries like the plaintiffs" or by "showing that the risk of constitutionally cognizable harm was so great and so obvious that the risk and the failure of supervisory officials to respond will alone support finding deliberate indifference." *Haberle II*, 936 F.3d at 141 (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 136–37 (3d. Cir. 2001)) (internal quotations omitted).

In *Haberle I*, the court found the plaintiff's complaint insufficient because it made general and vague allegations concerning the defendant Borough's history of violating the civil rights of its residents. 885 F.3d at 182. The complaint did not adequately allege a pattern of past violations similar to the one at issue in the complaint and could not have put the defendant Borough on notice that its policies, practices and procedures had to be changed. *Id.* The court found that the plaintiff should be given an opportunity to correct the deficiency by amending the complaint. *Id.* After amendment, the District Court again dismissed the complaint for failure to adequately plead intentional discrimination. *Haberle for Estate of Nixon*, 2018 WL 4770682, at *4–5. On the second appeal, the Third Circuit reversed and found that the complaint raised a plausible claim that the defendant Borough was deliberately indifferent in failing to adopt

policies accommodating individuals with mental disabilities. *Haberle II*, 936 F.3d at 142. The court found that the amended pleading included new facts demonstrating a history of instances of police encounters with mentally disabled individuals resulting in violations similar to what the plaintiff experienced. *Id.* at 141. The amended complaint also added facts concerning the defendant Borough's awareness of the history of such instances and their risks, and the defendant Borough's failure to adopt any policy to address them, including a policy that had already been drafted by an Officer in the Borough's Police Department. *Id.* at 142.

Plaintiffs allege Defendants "faile[d] to provide reasonable modifications to its policies and practices to accommodate Brandon Roberts's disability related needs when making contact with him at his home." (D.I. 1 at ¶ 61) Plaintiffs further plead that Defendants were deliberately indifferent because they "had notice of the need to reasonably accommodate Mr. Roberts disability-related needs and failed to do so." (*Id.* at ¶ 62) As a result, Roberts' "suffered greater injuries than other individuals taken into custody, specifically he was killed." (*Id.* at ¶ 63)

Plaintiffs have not plausibly alleged either of the conditions established in *Haberle I & II*. There is nothing in Plaintiffs' Complaint that indicates a history of encounters between disabled individuals and police that resulted in harm to those individuals similar to the harm suffered by Roberts nor facts suggesting Defendant City of Milford was aware of such encounters and their risks but that the Defendant City of Milford failed to adopt a policy to address those risks. Plaintiffs have not identified what "reasonable modifications" were necessary nor have they explained what "policies and practices" require "modifications." They discuss in general and conclusory terms that the Defendant City of Milford needs to modify its policies and practices without alleging any descriptive facts. Such conclusory allegations are insufficient on their face to provide notice to the Defendants of intentional discrimination, and therefore, Defendants'

Motion for Partial Dismissal is granted-in-part. Because the pleading has not been previously amended and Defendants have failed to show how amendment would be futile, Plaintiffs' request for leave to amend the Complaint is granted. *See Haberle I*, 885 F.3d at 182.

## V.     CONCLUSION

Based on the foregoing reasons, Defendants' Motion for Partial Dismissal of Plaintiffs' ADA claim in Count II (D.I. 14) is GRANTED-IN-PART and DENIED-IN-PART without prejudice. Plaintiffs are granted leave to amend their Complaint. An Amended Complaint is due on or before November 30, 2022.

Dated: November 16, 2022

Sherry R. Fallon
United States Magistrate Judge